

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 6, 1996

Bruce A. Levy, M.D.
Executive Director
Texas State Board of Medical Examiners
P.O. Box 2018
Austin, Texas 78768-2018

Opinion No. DM 423

Re: Authority of the Board of Medical Examiners to regulate hyperbaric oxygen therapy (RQ-890)

Dear Dr. Levy:

You have asked this office a series of questions concerning the authority of the Board of Medical Examiners (the "board") to regulate hyperbaric oxygen therapy. As we understand it from the materials you have presented to us, hyperbaric oxygen therapy involves placing a patient, usually for a period of ninety minutes, in a chamber filled with 100% oxygen the atmospheric pressure of which has been increased, generally to 2.4 atmospheres absolute pressure.

You first ask us whether the board has the authority to determine whether hyperbaric oxygen therapy is the practice of medicine for the purposes of the Medical Practice Act. We conclude that it does.

The Medical Practice Act (the "act"), article 4495b, V.T.C.S., gives the board broad powers to regulate the practice of medicine. In section 1.02(2), the legislature declares that the board "should remain the primary means of licensing, regulating, and disciplining the individual physicians and surgeons who are licensed to practice medicine." The phrase "[p]racticing medicine" is defined by section 1.03(a)(12) of the act as follows:

> A person shall be considered to be practicing medicine within this Act:
>
> (A) who shall publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof; or
>
> (B) who shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation.

This definition of the practice of medicine seems to us sufficiently broad to include hyperbaric oxygen therapy. Such therapy would certainly appear to be a "system or

method" designed to "treat . . . [a] disease or disorder, . . . physical deformity or injury. . . ." V.T.C.S. art. 4495b, § 1.03(12). This conclusion is further supported, in our view, by the rather limited amount of case law referring to hyperbaric oxygen therapy, by section 3.06(d)(1) of the act, and by *Thompson v. Texas State Board of Medical Examiners*, 570 S.W.2d 123 (Tex. Civ. App.--Tyler 1978, writ ref'd n.r.e.).

Our research has identified a total of twenty-two American cases referring to hyperbaric oxygen therapy in the last nineteen years. *See, e.g., Roberts v. Lowry*, 673 So. 2d 1323 (La. Ct. App. 1996); *Wilkerson v. Prelutsky*, No. 66263, 1996 WL 192052 (Mo. Ct. App. 1996); *Keefe v. Shalala*, 71 F.3d 1060 (2d Cir. 1995). While the question of whether this therapy constitutes the practice of medicine is not squarely presented by these cases, they indicate that hyperbaric oxygen therapy generally is regarded as a medical procedure.

Moreover, Texas law provides that the board may determine whether particular procedures constitute the practice of medicine. Section 3.06(d)(1) of the act expressly states that "[t]he board may determine whether or not an act constitutes the practice of medicine. . . ." *See Mitchell v. Amarillo Hosp. Dist.*, 855 S.W.2d 857, 874 (Tex. App.--Amarillo 1993), *cert. denied*, 115 S. Ct. 510 (1994). Additionally, in *Thompson*, two physicians argued that the board had no right to revoke their licenses to practice medicine for permitting unlicensed persons to perform acupuncture on their premises. They argued, *inter alia*, that the board was without authority to define acupuncture as within the practice of medicine. This contention the court rejected out of hand: "In our opinion acupuncture is properly included within the practice of medicine." 570 S.W.2d at 127. It further held the board's exercise of this authority to be a valid exercise of the police power of the state:

> The statutes in question and the actions of the Board clearly have a real and substantial relation to the object sought to be attained. The State seeks to protect the general health, safety and welfare of all its citizens through the actions of its Board of Medical Examiners. . . . By requiring only licensed physicians to administer acupuncture treatments, the Board fulfilled its duty to the people of this State to insure as best it can the competency of those practicing medicine.

*Id.* at 128-29.

Accordingly, based on the broad statutory definition of the practice of medicine, the express statutory authority provided in section 3.06(d)(1), the holding of *Thompson*, and our reading of those cases which discuss hyperbaric oxygen therapy, we conclude that the board has the authority to determine that the administration of such therapy is the practice of medicine.

Your second question is whether, having determined that hyperbaric oxygen therapy is the practice of medicine, the board may regulate the performance of such

therapy. Again, our answer is affirmative. Section 2.09(a) of the act reads, in pertinent part:

> The board may make rules, regulations, and bylaws not inconsistent with this Act as may be necessary for . . . the regulation of the practice of medicine in this state . . . .

This broad grant of discretionary rule-making authority is in our view sufficient to permit the board to make rules concerning the regulation of hyperbaric oxygen therapy.

You next ask whether the board's authority is sufficiently broad to permit rules which limit the ability of physicians to delegate performance of such therapy or establish standards for supervision of such therapy when a delegation has been made. We think that, generally speaking, the board has sufficient authority to adopt such rules. Physicians in Texas may prescribe treatment and delegate its administration to others. *Tatro v. Texas*, 703 F.2d 823, 827 (5th Cir. 1983), *aff'd in part, rev'd in part on other grounds*, 468 U.S. 883 (1984). Section 3.06(d)(1) of the act affirms that

> a person licensed to practice medicine shall have the authority to delegate to any qualified and properly trained person or persons acting under the physician's supervision any medical act which a reasonable and prudent physician would find is within the scope of sound medical judgment to delegate.

However, under section 3.06(d)(1), the board has the power to determine "whether or not an act constitutes the practice of medicine . . . and may determine whether any medical act may or may not be properly delegated by physicians." Accordingly, physicians' powers to delegate a procedure such as this may be limited by rule as a part of such a determination.

Finally, you ask whether the administration of hyperbaric oxygen therapy is "within the scope of independent practice of a licensed Texas podiatrist." If it is, the board may not regulate the podiatrist's practice of it, since the board's powers derive from the act, which by its own terms does not apply to "duly licensed podiatrists who confine their practice strictly to podiatry as defined by law." V.T.C.S. art. 4495b, § 3.06(b)(5).

The practice of podiatry is governed by chapter 11 of title 71, V.T.C.S., articles 4567 through 4576. The definition of podiatry offered by articles 4567(a) and 4567b is as follows:

> Any person shall be regarded as practicing podiatry within the meaning of this law, and shall be deemed and construed to be a podiatrist, who shall treat or offer to treat any disease or disorder, physical injury or deformity, or ailment of the human foot by any system or method and charge therefor, directly or indirectly, money or other compensation. . . .

Whether hyperbaric oxygen therapy may constitute the practice of podiatry depends, therefore, on whether it is a "system or method" which may be used to treat "any disease or disorder, physical injury or deformity, or ailment of the human foot." In our view, the answer to such a question would depend upon the resolution of factual questions concerning, for example, the value and appropriateness of such therapy in treating the human foot which we cannot answer in the opinion process.[1] However, if the answer is affirmative, then the board cannot regulate the practice of hyperbaric oxygen therapy by a licensed podiatrist. Such regulation would by law be within the purview of the State Board of Podiatric Medical Examiners.[2] V.T.C.S. art. 4568(j).

---

[1]While we have determined that the therapy is within the practice of medicine generally, we cannot make the same determination with respect to the practice of podiatry because the case law is not helpful in this regard and because it would require determinations about this specialized field we cannot make. In any event, the determination of what constitutes the practice of podiatry is the business of the Board of Podiatric Medical Examiners more than of this office.

[2]It is our understanding, based upon a brief prepared by the Board of Podiatric Medical Examiners, that that body does take the view that this therapy is within the practice of podiatry. It has accordingly drafted a proposed rule requiring that podiatrists practicing the therapy must follow the guidelines of the Undersea and Hyperbaric Medical Society ("UHMS"), must practice the therapy in a hospital setting, and must complete a course of training recognized by the UHMS and be certified as competent by that training agency.

# S U M M A R Y

The Board of Medical Examiners has the authority to determine whether hyperbaric oxygen therapy constitutes the practice of medicine, the power to regulate the performance of such therapy, and the power to make rules which limit the ability of physicians to delegate performance of such therapy or which establish standards for supervision of such therapy when a delegation has been made. Whether hyperbaric oxygen therapy is within the practice of podiatry depends upon the resolution of factual questions. However, if hyperbaric oxygen therapy is within the practice of podiatry, its practice by podiatrists is regulated by the Board of Podiatric Medical Examiners, not the Board of Medical Examiners.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James E. Tourtelott
Assistant Attorney General